UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : <br> : <br> v. : <br> : <br> : <br> **BRENDA BELTON,** : <br> : <br> **Defendant** : <br> : | Cr. No. 07-142 (RMU) <br><br> Violations: <br>  18 U.S.C. § 666 (Theft From Program <br>   Receiving Federal Funds) <br>  26 U.S.C. § 7201 ( Federal Tax Evasion) <br>  47 D.C. Code § 4101(a) (DC Tax Evasion) |

**SUPERSEDING INFORMATION**

The United States Attorney informs the Court that:

**Introduction**

At all times material to this Information:

1. Defendant BRENDA BELTON (hereinafter "defendant BELTON" or "BELTON") lived on Argyle Terrace, NW, in Washington, D.C. from April 2003 through June 2006.

2. On or about March 1, 2003, BELTON became the Executive Director, Compliance Division, Office of Charter School Oversight ("OCSO"), D.C. Public Schools ("DCPS"). OCSO had no more than five employees, including BELTON, at any time during her tenure.

3. The D.C. School Reform Act of 1995, as amended, identifies two eligible chartering authorities, the D.C. Board of Education (BOE) and the Public Charter School Board (PCSB). The BOE Charter Schools are run out of the OCSO. For the 2005/2006 school year, OCSO supervised 17 and PCSB supervised 34 charter schools.

4. The OCSO and its programs were funded by the District, the Federal Government through the No Child Left Behind Act (NCLB), and by a Central Investment Fund (CIF). The CIF consisted of 1% of the annual budgets of each of the BOE charter schools. Money left in the CIF belonged to the OCSO and did not have to be returned to the District at the end of the fiscal year.

5. Title 27 of the D.C. Municipal Regulations (DCMR) provides that Contracting Officers are appointed by the Mayor of D.C. and are heads of the agencies or their delegated appointees. Only the contracting officer has the authority to enter into, administer, and terminate contracts. Under Title 27, BELTON had no contracting authority and it was never delegated to her.

6. One of the duties of the OCSO is to monitor the BOE charter schools. Charter school monitoring is a required annual evaluation for all D.C. charter schools. It involves examining all aspects of a charter school, including but not limited to: teaching; student achievement; financial management; governance; compliance with D.C. School Reform Act; and parental involvement.

7. NCLB was created to close the achievement gap between disadvantaged and minority students and their peers. The goal of NCLB is to strengthen Title I of the Elementary and Secondary Education Act of 1965 by requiring states to implement statewide accountability systems covering all public schools and students. These systems are based on challenging state standards in reading and mathematics, annual testing for all students in grades 3 through 8, and annual statewide progress objectives ensuring that all groups of students reach proficiency within 12 years. States and the District are to use NCLB funds to meet NCLB goals.

8. During the 2003/2004 school year, NCLB gave OCSO and PCSB $1.9 million in appropriations to assist charter schools comply with NCLB. The money had to be spent by October 1, 2004. For the 2004/2005 school year, NCLB gave OCSO and PCSB $850,000 in NCLB appropriations.

9. E.A.I. was an educational consulting company that was incorporated in August 2002. B.W. and N.E., two of BELTON'S long-time friends, founded the company.

10. Equal Access in Education ("E.A.I.E.") was a fictitious company created by BELTON in or about March 2005. E.A.I.E. used the mailing address XX Underwood Place, NW, Washington, D.C. 20011.

11. XX Underwood Place is a private residence that was owned by B.W. from 1969 until 1990 when B.W. sold it to BELTON. N.E. lived at XX Underwood from approximately 1997 until July 2004 and intermittently paid BELTON rent. In February 2003, while going through bankruptcy proceedings, BELTON sold XX Underwood Place to her daughter, L.H.

12. T.T.G. was a real estate investment business created by L.H.. BELTON used the name T.T.G. to advance her scheme to defraud.

13. Habari Gani, dba WRG Publishing and Specialty Services and WRG Specialty Services, was a consulting business created by BELTON's close friend, W.G. Without W.G.'s permission or knowledge, BELTON used the name Habari Gani, to advance her scheme to defraud.

14. T.Z.G. was a real estate investment business created by W.G. Without W.G.'s permission or knowledge, BELTON used the name T.Z.G. to advance her scheme to defraud.

### The Scheme

15. From on or about March 2003 through May 2006, BELTON used her position as the Executive Director of the OCSO to direct money belonging to DCPS and NCLB to her personal bank accounts and her daughter's personal bank account, to which she had access. Over the three years, BELTON wrongfully paid herself approximately $383,910.25. In addition, BELTON used her position to improperly obligate the government with respect to seven no-bid contracts totaling $444,620.99. The primary beneficiaries of these contracts were BELTON's family members and friends.

16. No other DCPS employees or PCSB employees were knowingly or intentionally involved in BELTON's scheme and no other DCPS employees or PCSB employees obtained any money or other benefit from BELTON'S scheme.

### Purpose of the Scheme

17. It was the purpose of the scheme for defendant BELTON to use her position to enrich herself by fraudulently obtaining money by directing money from DCPS and NCLB to her personal bank accounts, her business bank account and a bank account belonging to her daughter.

### COUNT ONE - Theft from Program Receiving Federal Funds (Monitoring)

18. On or about January 2002, BELTON started a company by the name of BHX Consulting, Inc. (BHX) for the purpose of obtaining the OCSO monitoring contract for the 2001/2002 school year. The OCSO granted BHX this sole source contract.

19. From February 5, 2002 until September 18, 2002, BHX received $63, 240 in payments from the District of Columbia Government (District) for the OCSO monitoring

contract. Payments were submitted to BHX Consulting., LTD., P.O. Box 71615, Washington, DC 20024. Funds were deposited into BHX's Bank of America account.

20. From February 5, 2002 through September 18, 2002, BHX employed L.S., N.E., and six others as consultants/independent contractors to assist with the monitoring and paid them a total of $27,145.

21. While performing the OCSO monitoring contract under BHX, BELTON was also employed as a consultant for the Office of the Chief Academic Officer (OCAO), DCPS. From June 2002 through September 2002, BELTON received $6,951.20 for her work with OCAO.

22. From September 2002 through February 2003, BELTON worked as a Grant Writer in the DCPS, Office of Early Childhood Education (OECE). During that time, BELTON received payroll compensation from DCPS totaling $22,751.99.

23. On or about March 1, 2003, BELTON became the Executive Director, OCSO, DCPS at a salary of approximately $80,000 per year. BELTON's responsibilities included oversight of the BOE charter schools, reviewing and recommending charter school applications to the BOE, and ensuring that BOE charter schools complied with the D.C. School Reform Act of 1995.

24. Prior to BELTON becoming Executive Director, BOE decided that the OCSO needed to issue a Request for Proposal (RFP) for a monitor to replace BHX and switched from a sole-source contract to a competitively bid contract. The BOE waited until BELTON began working in March 2003 to allow her to issue the RFP.

25. Five individuals or groups applied for the monitoring contract: S.H., who held the monitoring contract for five years (1996-2001); Equal Access Inc. (E.A.I.); Educational Global Associates Inc.; Kidd Home Care International Inc.; and The Wilson Group.

26. E.A.I. was created and incorporated by B.W., N.E., and G.D. in August 2002. B.W. has been BELTON'S friend for over 40 years. N.E. was introduced to BELTON approximately 15 years ago. N.E. was also BELTON's tenant for approximately ten years at XX Underwood Place. B.W. and N.E. ran a bookstore called N.V.B. at XXXX Georgia Avenue, NW. G.D., who had no prior relationship to BELTON, left E.A.I. in 2003.

27. In early April 2003, BELTON created a three-person Technical Evaluation Panel (TEP) to evaluate the proposals: P.S., BELTON'S Maid of Honor and the Godmother of BELTON'S daughter L.H.; L.L., who later opened BOE charter school the Washington Academy Public Charter School; and L.B. BELTON served as the chairperson of the TEP.

28. The normal process for the TEP required each panelist and the chairperson to report to the DCPS Office of Contracts and Acquisitions (OCA) to be orientated with the evaluation process and to fill out disclosure statements and conflict of interest statements. However, BELTON circumvented the process such that the TEP never met and the required disclosure statements and conflict of interest statements were never completed and submitted.

29. BELTON returned the proposals to OCA after giving E.A.I. a 54-point margin over the next competitive bid.

30. On May 22, 2003, OCSO awarded E.A.I. a one-year monitoring contract for $53,950. In addition, four option years, which would require annual BOE approval, were added to the contract. This was E.A.I.'s first contract of any type and the only time E.A.I. made any money.

31. E.A.I. hired independent contractors to perform the monitoring services. Though the contract, based on E.A.I.'s bid, was for $53,950, E.A.I. received a total of $65,000 in payments from the District for the 2002-2003 school year.

32. After completion of the monitoring, E.A.I. submitted their monitoring reports for BOE review. At least one BOE member was not satisfied with the quality of E.A.I.'s reports and BOE Member P.C. recommended that BELTON request assistance from S.H. for the 2003/2004 school year.

33. For the 2003/2004 school year, if BELTON wanted E.A.I. to continue, BELTON was required to sign and submit a "modification" indicating that she wished to exercise the first option year. The modification was submitted but never signed. Because E.A.I. was no longer going to complete the monitoring, Title 27 of the DCMR required that BELTON put the monitoring contract up for competitive bidding. Instead, BELTON exercised the first option year in E.A.I.'s original contract by leaving E.A.I. as the contracting party in name but subcontracting all of the work.

34. BELTON told S.H. (operating as the G.H.G.), who helped design the DC charter school program while serving as a deputy superintendent of DCPS, and S.F. (operating as the F.C.S.), who retired after spending 21 years as a DCPS principal and who had prior monitoring experience, that E.A.I. wanted to subcontract the work and that the two would work together for the 2003/2004 school year.

35. For the 2003/2004 school year, BELTON told S.H. and S.F. that she would pay the two of them $55,000 to monitor fifteen charter schools, as well $10,000 to perform the five year review for five of the charter schools. S.H. and S.F., and their respective contractors, divided the schools and monitoring responsibilities. BELTON never provided S.H. or S.F. with a contract to formalize the arrangement.

36. Based on BELTON'S instructions, S.H. and S.F. billed E.A.I. for their services but never submitted their invoices directly to E.A.I., and never met with any employees or representatives of E.A.I. S.H. and S.F. delivered their invoices directly to BELTON. Both S.H. and S.F. repeatedly complained to BELTON and the OCSO staff that it was taking too long for them to be paid and to receive their tax forms.

37. After receiving the invoices from S.H. and S.F., BELTON combined them and created one invoice in the name of E.A.I. to submit to DCPS for payment. DCPS Office of the Chief Financial Officer (OCFO) processed checks payable to E.A.I. (XXXX Georgia Ave, NW, Washington, DC). Based on the documents manufactured by BELTON, E.A.I. paid S.H. and S.F. as IRS tax code 1099 employees.

38. BELTON told B.W. and N.E. that S.H. or S.F. would be directly taking over the monitoring contract for the 2004/2005 school year.

39. For the 2004/2005 school year, again in violation of Title 27 of the DCMR, BELTON exercised E.A.I.'s second option year. This time, BELTON never submitted the required modification. Since E.A.I. was no longer involved with the monitoring contract, BELTON created the name Equal Access in Education (E.A.I.E.). In an attempt to make E.A.I.E. appear to be the same as E.A.I., BELTON used E.A.I.'s Employer Identification Number, (EIN) (14-877904), on invoices for payment. However, BELTON changed the business address from XXXX Georgia Avenue, NW, Washington, DC to XX Underwood Place.

40. Just S.F. and her team of contractors conducted the monitoring for the 2004/2005 school year. BELTON told S.F. that she would be paid $60,000 to monitor 16 schools. S.F. went over budget by approximately $5,000. S.F. was paid all of the money owed to her under the contract, albeit late.

41. On or about March 2005, BELTON began to submit fraudulent invoices in the name of E.A.I.E. During the 2004/2005 school year, E.A.I.E. received a total of $108,759.20 from the District, and $119,750 in NCLB Funds for the OCSO monitoring contract, for a total of $228,509.20. It was improper to use NCLB funds for charter school monitoring. BELTON received all checks made payable to E.A.I.E., and deposited the funds into BHX's Bank of America bank account. On at least two occasions, BELTON paid S.F. using the money that she had improperly deposited in the BHX accounts.

42. BELTON double billed DCPS and NCLB. In addition to E.A.I.E. receiving $228,509.20 for the 2004/2005 school year, S.F. received approximately $13,812 from the District and $56,360 in NCLB Funds for the OCSO monitoring contract. S.H. received

$6,000.00 from the District for the OCSO monitoring that she did during the 2003/2004 school year.

43. For the 2005/2006 school year, BELTON exercised the third option year in the original E.A.I. contract without BOE approval. This resulted in E.A.I.E. receiving a total of $48,041.20 from the District.

44. S.F. started monitoring again for the 2005-2006 school year but never finished due to the now public investigation. S.F. did not request payment.

45. In an effort to cover up her scheme to defraud, BELTON repeatedly generated fraudulent Memoranda of Understandings (MOU) between E.A.I.E., OCSO, and various vendors.

46. In April 2006, H.S.-R., BELTON'S childhood friend, signed and dated an agreement between E.A.I.E. and F.C.S., stating that S.-R. was the President of E.A.I.E.. BELTON had this document signed and back dated to December 14, 2004. S.-R. never did any work for E.A.I.E. and was not compensated by E.A.I.E.

47. BELTON used the name of her second cousin, V.P., without V.P.'s permission, as E.A.I.E.'s Chief Executive Officer when BELTON signed MOU's dated July 8, 2005 and August 31, 2005. V.P. never did any work for E.A.I.E. and was not compensated by E.A.I.E.

48. On or about March 9, 2006, BELTON unlawfully registered E.A.I.E. with the Internal Revenue Service (IRS) and the District of Columbia, listing V.P as the registering agent. IRS gave E.A.I.E. the EIN: 20-4460260.

49. In sum, Belton used the fictitious business name E.A.I.E. to fraudulently obtain $203,438.40 as shown in the following chart:

| Date | Payor | Payee | Account Name | Amount |
|---|---|---|---|---|
| April 2005 | DCPS | E.A.I.E. | BHX Consulting | 25,747.00 |
| April 2005 | BELTON | | S.F. | -18,747.00 |
| May 2005 | DCPS | E.A.I.E. | BHX Consulting | 30.949.00 |
| May 2005 | BELTON | | S.F. | -18,949.00 |
| June 2005 | BELTON | | S.F. | -19,246.20 |
| June 2005 | DCPS | E.A.I.E. | BHX Consulting | 22,446.20 |
| July 2005 | BELTON | | S.F. | -15,670 |
| July 2005 | DCPS | E.A.I.E. | BHX Consulting | 29,617.00 |
| July 2005 | DC-PCSB | E.A.I.E. | BHX Consulting | 43,000.00 |
| September 2005 | DC-PCSB | E.A.I.E. | BHX Consulting | 76,250.00 |
| February 2006 | DCPS | E.A.I.E. | BHX Consulting | 9,828.00 |
| February 2006 | DCPS | E.A.I.E. | BHX Consulting | 22,786.20 |
| May 2006 | DCPS | E.A.I.E. | BHX Consulting | 15,427.00 |
| | | | **TOTAL** | **$203,438.40** |

50. From on or about September 2004 through on or about June 2006, in the District of Columbia, the defendant, Brenda BELTON, being the Executive Director of the D.C. Public Schools, Board of Education, Office of Charter School Oversight, said office receiving in the one year period beginning September 2004, benefits in excess of $10,000 under the Federal No Child Left Behind Act, obtained money in excess of $203,000 that was under the care, custody or control of the D.C. Public Schools.

In violation of Title 18, United States Code, Section 666

### COUNT TWO - Theft from Program Receiving Federal Funds (Other Payments)

51. Paragraphs One through 50 are realleged as though fully set forth herein;

52. From June 2003 through July 2004 BELTON received five checks totaling $12,300 from E.A.I. Two of the checks, written to "Dorris Norris" for $4000, were deposited into BELTON'S BHX bank account. Two of the checks were written directly to BHX Consulting totaling $8,000. And the last check was written to BELTON for $300 which was deposited into BELTON'S personal account.

53. From July 2003 through August 2003, the N.V.B., which B.W. founded and presided over and which N.E. managed, paid BELTON $9,660.80.

54. In August 2003, charter school Y.A.W. paid BELTON $3,000.

55. Y.A.W. is a vocational education high school located at XXXX Chillum Place, NE, Washington, DC that was approved for a charter in January 2004. At the start of the 2006/2007 school year it had 120 students. In January 2004, the BOE approved Y.A.W.'s application for a charter school and the charter school opened Fall 2004, with B.W. as the founder and Executive Director, and N.E. as the school principal.

56. In 2004, BELTON was part of a private real estate group out of New York called C.P. C.P. bought properties in D.C. and New York and rented them to charter schools. BELTON, as a principal of C.P., facilitated purchases and acted as a consultant for the company. The principals of C.P. included BELTON and D.S. C.P. acquired two properties in D.C.—one of which became the location for Y.A.W. Y.A.W. rented the Chillum Place property from D.S. BELTON entered into an arrangement with D.S., where D.S. agreed to pay BELTON $5,000 per month for five years, totaling $300,000, if Y.A.W. paid its rent every

month. BELTON received a total of $50,000 from D.S. (which was deposited into the T.T.G. account) per their arrangement. However, when B.W. failed to make the rent payments for YAW, BELTON'S payments stopped. BELTON enlisted W.G. to repeatedly contact D.S. on BELTON'S behalf, in an attempt to collect the money from D.S.

57. In addition, BELTON received numerous improper payments from people to whom she gave no-bid, non-advertised positions. For example: In October 2004, L.S. paid BELTON $3000 in a check that she wrote to T.T.G.. From December 2004 through June 2006, when PCSB terminated P.S., P.S. gave L.S. $27,737. In February 2005, L.S. paid BELTON another $3000 in a check that she wrote to BHX Consulting. In May 2005, W.G. gave BELTON $2000. In October 2005, V.P. cut a check to T.T.G. for $5,000.

58. In sum, BELTON fraudulently received approximate $180,471.85 in funds, other than those directed to E.A.I.E., as shown in the following chart:

| Date | Payor | Payee | Account Name | Amount |
|---|---|---|---|---|
| Jun 03 | E.A.I. | Dorris Norris | Brenda Belton | 2,000.00 |
| Jul 03 | E.A.I. | Dorris Norris | BHX Consulting | 2,000.00 |
| Jul 03 | N.V.B. | A-1 A. | BHX Consulting | 1,200.00 |
| Jul 03 | N.V.B. | BHX Consulting | BHX Consulting | 578.00 |
| Jul 03 | N.V.B. | A-1 A.A | A-1 A. | 1,500.00 |
| Jul 03 | N.V.B. | A-1 A. | A-1 A. | 1,500.00 |
| Jul 03 | N.V.B. | A-1 A. | A-1 A. | 1,500.00 |
| Aug 03 | N.V.B. | A-1 A. | A-1 A. | 3,382.80 |
| Aug 03 | Y.A.W. | Brenda Belton | BHX Consulting | 3,000.00 |
| Oct 03 | E.A.I. | Brenda Belton | BHX Consulting | 3,000.00 |

| | | | | |
|---|---|---|---|---:|
| Dec 03 | E.A.I. | Brenda Belton | Brenda Belton | 300.00 |
| Jul 04 | E.A.I. | Brenda Belton | BHX Consulting | 5,000.00 |
| Jul 04 | C.P./D.S. | T.T.G. | T.T.G. | 5,000.00 |
| Aug 04 | C.P./D.S. | T.T.G. | T.T.G. | 5,000.00 |
| Aug 04 | C.P./D.S. | T.T.G. | T.T.G. | 5,000.00 |
| Sep 04 | DCPS | Habari Gani | T.T.G. | 5,700.00 |
| Oct 04 | L.S. | T.T.G. | T.T.G. | 3,000.00 |
| Nov 04 | C.P./S.D. | T.T.G. | T.T.G. | 10,000.00 |
| Dec 04 | P.S. | L.H. | L.H. | 3,000.00 |
| Jan 05 | L.S. | Brenda Belton | BHX Consulting | 1,500.00 |
| Jan 05 | P.S. | L.H. | L.H. | 782.00 |
| Jan 05 | P.S. | L.H. | L.H. | 785.00 |
| Feb 05 | P.S. | L.H. | L.H. | 785.00 |
| Feb 05 | P.S. | L.H. | L.H. | 785.00 |
| Feb 05 | L.S. | Brenda Belton | BHX Consulting | 3,000.00 |
| Mar 05 | P.S. | L.H. | L.H. | 800.00 |
| Mar 05 | P.S. | L.H. | L.H. | 800.00 |
| Apr 05 | P.S. | L.H. | L.H. | 800.00 |
| Mar 05 | DCPS | Habari Gani | BHX Consulting | 3,384.65 |
| Mar 05 | DCPS | H. S.-R. | T.T.G. | 6,300.00 |
| Apr 05 | P.S. | L.H. | L.H. | 800.00 |
| May 05 | P.S. | L.H. | L.H. | 800.00 |
| May 05 | P.S. | L.H. | L.H. | 800.00 |
| May 05 | W.G. | Brenda Belton | Brenda Belton | 2,000.00 |
| Jun 05 | P.S. | L.H. | L.H. | 800.00 |
| Jul 05 | C.P./S.D. | T.T.G. | T.T.G. | 15,000.00 |
| Jul 05 | P.S. | L.H. | L.H. | 800.00 |
| Jul 05 | P.S. | L.H. | L.H. | 800.00 |

| Jul 05 | DCPS | Habari Gani | BHX Consulting | 4,143.40 |
|--------|------|-------------|----------------|----------|
| Aug 05 | P.S. | L.H. | L.H. | 800.00 |
| Sep 05 | P.S. | L.H. | L.H. | 800.00 |
| Oct 05 | P.S. | L.H. | L.H. | 800.00 |
| Oct 05 | P.S. | L.H. | L.H. | 800.00 |
| Oct 05 | V.P. | T.T.G. | T.T.G. | 5,000.00 |
| Nov 05 | C.P./D.S. | T.T.G. | T.T.G. | 10,000.00 |
| Nov 05 | P.S. | L.H. | L.H. | 800.00 |
| Nov 05 | DC-PCSB | T.Z.G. | T.T.G. | 43,750.00 |
| Dec 05 | P.S. | L.H. | L.H. | 800.00 |
| Dec 05 | P.S. | L.H. | L.H. | 800.00 |
| Dec 05 | P.S. | L.H. | L.H. | 800.00 |
| Jan 06 | P.S. | L.H. | L.H. | 800.00 |
| Feb 06 | P.S. | L.H. | L.H. | 800.00 |
| Mar 06 | P.S. | L.H. | L.H. | 800.00 |
| Mar 06 | P.S. | L.H. | L.H. | 800.00 |
| Apr 06 | P.S. | L.H. | L.H. | 800.00 |
| Apr 06 | P.S. | L.H. | L.H. | 800.00 |
| Apr 06 | P.S. | L.H. | L.H. | 800.00 |
| May 06 | P.S. | L.H. | L.H. | 800.00 |
| May 06 | P.S. | L.H. | L.H. | 800.00 |
| Jun 06 | P.S. | L.H. | L.H. | 800.00 |
|  |  |  | **TOTAL** | **180,471.85** |

59. From on or about September 2004 through on or about June 2006, in the District of Columbia, the defendant, Brenda BELTON, being the Executive Director of the D.C. Public Schools, Board of Education, Office of Charter School Oversight, said office receiving in the one year period beginning September 2004, benefits in excess of $10,000 under the Federal No Child Left Behind Act, obtained money in excess of $180,000 that was under the care, custody or control of the D.C. Public Schools.

60. In addition to the Federal and District funds that BELTON fraudulently received, BELTON unilaterally hired, without posting or requesting bids, several friends and family members as consultants for the OCSO. BELTON paid them out of NCLB and DCPS funds.

61. In 2004, BELTON hired W.G. to perform multiple consulting jobs. From 2004-2006, BELTON paid W.G. (as an individual and through her businesses) $292,968 from NCLB and DCPS funds.

62. To further enrich herself, BELTON created a fraudulent Memorandum of Understanding (MOU) between the OCSO and T.Z.G., and submitted an accompanying invoice for $43,750, which was paid out of NCLB funds. BELTON fraudulently endorsed and deposited the check into her personal bank account on November 28, 2005. BELTON also created three other fraudulent invoices, all in the name of Habari Gani, forged the signature for Habari Gani, and deposited the checks, which were drawn from DCPS funds, totaling $13,228.05 into her personal account.

63. In late 2004, BELTON hired P.S. as a Charter School Liaison for the BOE. BELTON arranged for P.S. to be paid out of NCLB funds administered by PCSB. P.S. only worked for a few months, but continued to be paid as a full-time employee. P.S. received

$71,535 in compensation from PCSB between April 2005 and April 2006. In addition to her salary, P.S. received $3,733 in consulting fees from DCPS.

64. In 2003, BELTON hired L.S., who has been friends with BELTON for over twenty-years, to perform consulting work for the OCSO. From 2003-2006 L.S. received $41,581 in DCPS funds.

65. In 2005, BELTON gave a no-bid contract to V.P., her second cousin, for $15,000. BELTON told V.P. that a portion of her contract would be subcontracted to T.T.G..

66. In 2005, BELTON gave a no-bid contract to the D.J.E.F. for $20,000. C.D.-J., a former DCPS employee and friend of BELTON, is the owner of D.J.E.F.

67. In 2005, BELTON created a fraudulent $6,300 invoice in the name of H.S.-R.. The invoice was paid from DCPS funds. BELTON forged H.S.-R.'s signature and deposited the check into BELTON'S personal bank account.

68. According to Title 27 DCMR Chapter 18, Section 1802.1(a), not only was BELTON not a contracting officer, but any contract over $10,000 had to be put up for competitive bid.

In violation of Title 18, United States Code, Section 666

### COUNT THREE - Attempt to Evade or Defeat Federal Tax

69. Paragraphs 1 through 74 are realleged as though fully set forth herein;

70. The following chart shows how much BELTON should have paid in Federal Taxes, had she filed as required:

|  | 2002 | 2003 | 2004 | 2005 | Total |
|---|---|---|---|---|---|
| Taxable Income | 43,810 | 58,882 | 76,536 | 248,210 | 427,378 |
| Tax Due and Owing | 10,433 | 4,355 | 7,086 | 73,695 | **95,568** |

71. Beginning on or about January 1, 2001, through on or about April 15, 2006, in the District of Columbia and elsewhere, BRENDA BELTON, a resident of the District of Columbia did willfully attempt to evade and defeat the income tax due and owing by her to the United States for the tax years 2001 through 2005 by various means, including but not limited to:

a)  failing to timely file 2001 through 2005 United States Individual Income Tax Return;

b) failing to pay said tax due and owing.

In violation of Title 26, United States Code, Section 7201.

**COUNT FOUR - Attempt to Evade or Defeat D.C. Tax**

72. Paragraphs 1 through 77 are realleged as though fully set forth herein;

73. The following chart shows how much BELTON should have paid in D.C. Taxes, had she filed as required:

|  | 2004 | 2005 | Total |
|---|---|---|---|
| Taxable Income | 82,825 | 249,883 | 332,708 |
| Tax Due and Owing | 6,915 | 21,790 | **28,705** |

74. Beginning on or about January 1, 2004, through on or about April 15, 2006, in the District of Columbia and elsewhere, BRENDA BELTON, a resident of the District of Columbia did willfully attempt to evade and defeat the income tax due and owing by her to the District of Columbia, which tax she evaded or attempted to evade exceeded $10,000, by various means, including but not limited to:

a)  failing to timely file 2004 and 2005 District of Columbia Individual Income Tax Returns;

b) failing to pay said tax due and owing.

In violation of Title 47, District of Columbia Code, Section 4101(a).

    Respectfully submitted,

    JEFFERY A. TAYLOR
    UNITED STATES ATTORNEY

By:   _____
    Timothy G. Lynch, D.C. Bar No. 456506
    Assistant United States Attorney
    Fraud & Public Corruption Section
    555 4th Street, NW
    Washington, D.C. 20530
    (202) 353-4862