## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal Action No. 07-142 (RMU)** |
| | : | |
| **BRENDA BELTON** | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this reply to defendant's sentencing memorandum.

### INTRODUCTION

For a defendant who seeks a sentence at the low end of the guidelines range despite her truly offensive conduct, it should not be too much to expect genuine contrition.

We cannot peer directly into Dr. Belton's heart in search for true remorse, but we can know her by her conduct during the several years of her scheme.

We can also know her by the ways she and her representatives have chosen to describe that conduct: do we see an understanding and appreciation for what she has done and what she has failed to do, or does she sugarcoat her offenses? Does she lament the real harms she has caused, or is she solipsistic? Is she sincere, or does she leave out details that contribute to an overall message of continued denial?

With those questions in mind, it is significant what Dr. Belton's sentencing memorandum does say. She pleaded guilty after stealing hundreds of thousands of dollars meant for schools, demanding kickbacks in return for contracts, and evading taxes even while receiving a salary as a public official.

Yet this is how she has chosen to describe her crimes and their impact:

- "she made bad choices," (Def. Mem. at 9);

- "she made a series of ill-advised and bad choices," (id. at 10);

- she showed "poor judgment," (id. at 11);

- "bad decisions," (id. at 14);

- she has "forever tarnished her good reputation," (id. at 9);

- she "has had to forfeit her career," (id.);

- "Ms. Belton and her family will live with the stigma," (id. at 14);

- her "reputation has been irreparably damaged," (id. at 15).

Dr. Belton was not charged with "bad choices," "bad judgment," or "bad decisions;" she was charged with and found guilty of federal crimes based on her corrupt and selfish use of public office. Nor is the real harm here the one to her reputation; the truly meaningful harm has been to the children in the schools she was supposed to be overseeing, to their parents, to her former colleagues, and to the citizens of the District of Columbia.

It is also significant what Dr. Belton's sentencing memorandum does <u>not</u> say. Although she begrudgingly admits to accepting kickbacks for awarding no-bid contracts, she nowhere acknowledges having <u>stolen</u> more than $260,000 from the District of Columbia's schools by submitting false and fraudulent invoices: $203,438.40 using her own sham corporation, EAIE; and another $60,000 by submitting invoices in other companies' names, forging the signatures of the payees, and depositing the funds into her own accounts. Those thefts are simply ignored.

Under the circumstances, and for the reasons discussed in the government's sentencing memorandum, Dr. Belton deserves a sentence at the high end of the guidelines.

## I.    Dr. Belton's Conduct Harmed Children.

Dr. Belton disclaims responsibility for the 2003 test scores of children in the Board of

Education Charter Schools, despite having become the Executive Director of the Office of

Charter School Oversight on March 1, 2003. But she cannot evade her responsibility for the

troubling test scores in 2004, 2005, or 2006: she stole hundreds of thousands of dollars that

could have been used to help students and teachers in those years. Much like the funds missing

from her school accounts, those three years of test scores are missing entirely from her sixteen-

page sentencing memorandum; and those omissions tell us a great deal about her willingness to

own up to the harms she caused.

Finally, even giving Dr. Belton a pass on the test scores for the year in which she became

Executive Director, there is, sadly, an even more devastating issue: as Executive Director, Dr.

Belton had to have known in 2003 just how poorly students were doing in her schools. That she

chose to steal from those children anyhow tells us a great deal about her "history and

characteristics." See 18 U.S.C. § 3553(a)(1).

## II.    Dr. Belton Exaggerates Her Contributions.

It is not the government's purpose to go through each and every one of Dr. Belton's

claims; it will suffice to examine a few of them closely:

- "During [her] tenure from 2003-2006, she instituted comprehensive" monitoring and evaluation of charter schools." Def. Mem. at 4, point 1.

The Board of Education monitoring process was established in 1997, well before her tenure

began. Moreover, Dr. Belton utterly corrupted the monitoring process by steering no-bid

contracts to friends and relatives and by stealing funds meant for monitoring.

•    She "pioneered the Annual 'Best Practices Retreat.'" Id. at 4, point 3.

Dr. Belton neglects to mention that she gave her friend W.G. a no-bid contract for this retreat.

•    She "began a program called the 'Summer Administrators Workshop.'" Id. at 4, point 4.

Dr. Belton fails to mention that this program was held at the charter school run by Participants 1

and 2, and that she gave a $35,000 no-bid contract for the program to two of her friends.

•    She was responsible for creating "instructional videos." Id. at 5, point 1.

This was another no-bid contract to W.G.

•    She began a "Teacher-Staff Development" program. Id. at 5, point 3.

Dr. Belton awarded this as a no-bid contract. When she submitted an invoice for that program

and several others to the Comptroller in the Office of the Chief Financial Officer for the District

of Columbia Public Schools, the payment request for those invoices was denied because of a lack

of supporting documentation. Undeterred, Dr. Belton managed to sidestep the Comptroller's

objections and obtain approval for a list of invoices that included a $15,427 fraudulent invoice

that she placed into her own personal accounts.

•    She "sav[ed] the District millions of dollars" by closing charter schools." Id. at 5.

If Dr. Belton seeks to avoid blame for test scores in 2003 because she became the Executive

Director for Oversight in March 2003, it is hard to see how she gets credit for closing three

charter schools in June 2002. Moreover, when a charter school closes, its students still need to

be educated elsewhere; and since their education costs money, it is not necessarily true that

closing a charter school leads to significant and identifiable costs savings.

**III.    Dr. Belton Was the Leader and Organizer of this Scheme.**

Without Dr. Belton as the leader of the scheme, none of the other participants would have been guaranteed their jobs and no-bid contracts; and Dr. Belton received the overwhelming majority of the proceeds of the scheme. Although she is correct that she did not share "any substantial decision-making with other" participants, see Def. Mem. at 8, that is only because she was a leader and made the decisions for the scheme herself.[1]

**IV.    A Sentence at the Top of the Guidelines Would Reflect the Seriousness of the Offenses and Deter Others.**

Contrary to Dr. Belton's claims, a sentence at the top of the guidelines range would send the most powerful message of deterrence to public officials faced with the temptation to steal or otherwise use their public office for private gain. Such a sentence would best reflect the seriousness of her offenses.

---

[1]    Contrary to her assertions, Dr. Belton does serve as "an example of gratuitous spending, lavish corruption, and extensive schemes." See Def. Mem. at 8. Her conspicuous consumption was on view during the execution of the search warrants and was corroborated in records demonstrating her expenditures during the years of her scheme. Moreover, her extensive scheme involved numerous participants over several years, a sham corporation, illegitimate use of legitimate companies, kickbacks, embezzlement, and falsification of documents to perpetrate and conceal the scheme.

## CONCLUSION

The Court should sentence Dr. Belton at the high end of the guideline range, and in

accordance with the factors articulated in 18 U.S.C. § 3553(a), to punish her for her conduct and

to deter others who might consider using their public office for private gain, not public good.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By:

Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorney
555 4th Street, NW
Washington, D.C. 20530
(202) 353-4862
timothy.lynch2@usdoj.gov